UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| RONALD OERTWICH, | ) | |
| | ) | |
| Plaintiff, | ) | 3:19-cv-00082 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| TRADITIONAL VILLAGE OF TOGIAK, *et al.*, | ) | [Re: Motion at docket 22] |
| Defendants. | ) | |

## I. MOTION PRESENTED

At docket 22 defendants Traditional Village of Togiak ("Tribe") and Jimmy Coopchiak, Teodoro Pauk, Leroy Nanalook, Anecia Kritz, Esther Thompson, John Nick, Willie Wassillie, Herbert Lockuk, Jr., William Echuck, Craig Logusak, Paul Markoff, Peter Lockuk, Sr., and Bobby Coopchiak (collectively "individual defendants") move to dismiss the complaint filed by plaintiff Ronald Oertwich ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff responds at docket 31, and the Tribe and the individual defendants reply at docket at docket 38.

## II. BACKGROUND

Plaintiff filed a complaint seeking declaratory and injunctive relief plus compensatory and punitive damages naming the Tribe, the individual defendants, the

State of Alaska Department of Public Safety and the City of Togiak as defendants.[1] Plaintiff's nine claims for relief are rooted in the fact that the Tribe banished him from Togiak on the grounds that he brought alcohol into the village and Plaintiff nevertheless returned to the village. The court granted the City of Togiak's motion to dismiss Plaintiff's claim for punitive damages against it.[2] The court also granted the motion by the State of Alaska Department of Public Safety to dismiss Plaintiff's claims against it.[3]

The Tribe and the individual defendants contend that this court lacks jurisdiction to entertain Plaintiff's claims against them because they are entitled to sovereign immunity, and because there are other insurmountable impediments to Plaintiff's claims against them.

### III. STANDARDS OF REVIEW

**A. Rule 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. "A federal court has subject matter jurisdiction over an action that either arises under federal law, or when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000."[4] When a defendant challenges subject matter jurisdiction under

---

[1] Complaint at docket 1.

[2] Order at docket 24.

[3] Order at docket 27.

[4] *Tosco Corp. v. Comtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (citing 28 U.S.C. §§ 1331, 1332(a)).

Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion."[5]

**B. Rule 12(b)(6)**

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[6] To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[7] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[8] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[9]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

---

[5]*Id.*

[6]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[7]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[8]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[9]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[10]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

is liable for the misconduct alleged."[11] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[12] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13] "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[14]

**C. Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[15] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and protects "all but the plainly incompetent or those who knowingly violate the law."[16] Qualified immunity requires a two-part analysis: (1) was there deprivation of a statutory or constitutional right; and (2) was the right

---

[11]*Id.*

[12]*Id.* (citing *Twombly*, 550 U.S. at 556).

[13]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[14]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[15] *Pearson v. Callahan*, 555 U.S. 223, 230 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[16] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

clearly established at the time of the alleged misconduct.[17]  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[18] An official's challenged conduct violates clearly established law if at the time of the conduct the "contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates that right."[19]

## IV.  DISCUSSION

**Sovereign Immunity**

The principal argument offered in support of the motion to dismiss pursuant to Rule 12(b)(1) is that the Tribe and the individual defendants are entitled to sovereign immunity, because the Tribe is a federally recognized tribe and the individual defendants were acting as officers and employees of that sovereign.  Plaintiff does not dispute that the Tribe and the individual defendants acting in their official capacities on behalf of the Tribe may claim sovereign immunity.  Rather, Plaintiff contends that there are exceptions to the application of sovereign immunity that foreclose reliance on that doctrine here.

Plaintiff contends that his claims sound in tort and that tribal sovereign immunity does not apply to tort claims.  He relies on a decision by the Supreme Court of Alabama

---

[17] *Saucier v. Katz,* 533 U.S. 194, 201-202 (2001).

[18] *Pearson v. Callahan*, 555 U.S. at 236.

[19] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

-5-

in *Wilkes v. PCI Gaming Authority*[20] holding that sovereign immunity does not bar tort claims brought by non-Indian plaintiffs. That case is not binding precedent in this court. Plaintiff asserts that the fact that the Supreme Court decided not to grant certiorari when the tribe appealed[21] may be relied upon as an expression of the Supreme Court's view that the Alabama court's decision is correct. As even a first year law student should know, the denial of a petition for certiorari does not constitute a decision on the merits by the Supreme Court.

There is binding precedent respecting Plaintiff's assertion of an exception to sovereign immunity for tort claims. In *Arizona v. Tohono O'odham Nation*[22] the appellate court addressed a complicated dispute about the right of one Indian tribe to operate a casino on a particular parcel of land. The state of Arizona and another Indian tribe argued that the Tohono O'odham Nation ("Nation") could not operate a casino on that parcel. The case turned primarily on interpretation of a gaming compact executed by the state and the Nation pursuant to the Indian Gaming Regulatory Act and on the status of the parcel of land proposed for the casino. However, the defendants also made tort claims against the Nation. The appellate court held that the plaintiffs' claims for fraud in the inducement, material misrepresentation, and promissory estoppel were not contract claims, but rather tort claims. It further held that the tort claims were barred

---

[20]No. 1151312, 2017 WL4385738 (Ala. Sept. 29, 2017).

[21]*Poarch Band of Creek Indians v. Wilkes,* No. 17-1175, 2019 WL 2570656 (U.S. June 24, 2019).

[22]*Arizona v. Tohono O'odham Nation,* 818 F.3d 549 (9th Cir. 2016).

by tribal sovereign immunity, writing: "We have held that tribal sovereign immunity bars tort claims against an Indian tribe, and that remains good law."[23]

Plaintiff also contends that his lawsuit somehow involves issues relating to land titles in or around the City of Togiak. From this premise, Plaintiff reasons that the "immovable property exception" precludes the use of tribal sovereign immunity. Plaintiff points to the decision by the Supreme Court in *Upper Skagit Indian Tribe v. Lundgren.*[24] In the *Skagit* case, the defendant, Lundgren, owned a parcel of land within the tribe's reservation. Lundgren's property was fenced, but the tribe argued that the fence enclosed about an acre of reservation land which was not part of Lundgren's parcel. Lundgren had prevailed in the Washington Supreme Court, but that court had relied on an erroneous interpretation of *County of Yakima v. Confederated Tribes and Bands of the Yakima Nation*.[25] The Washington court read the *Yakima* case to say that tribes may be sued on *in rem* claims, but not on *in personam* claims. The *Skagit* court explained that the *Yakima* decision involved a question of statutory interpretation and "resolved nothing about sovereign immunity."[26] The *Skagit* majority concluded that the case should be remanded to state court to afford the state court an opportunity to address the sovereign immunity issues involving the immovable property exception. Concurring, Chief Justice Roberts agreed that the immovable property exception issue

---

[23]*Id.* at 563 n.8.

[24]138 S. Ct. 1649 (2018).

[25]502 U.S. 251 (1992).

[26]138 S. Ct. at 1653.

should be remanded.  However, he warned that "if it turns out that the rule does not extend to tribal assertions of rights in non-trust, non-reservation property, the applicability of sovereign immunity in such circumstances would, in my view, need to be addressed in a future case."[27]  Justice Thomas dissented contending that the Court itself should address the immovable property exception.  The Washington court did not have an opportunity to address the immovable property exception, because following remand the tribe quit claimed the disputed real estate to Lundgren.

While the contours of the exception as it might apply to tribal sovereign immunity remain unclear, it is clear that the exception relates to claims about real estate. Plaintiff's first claim is based on allegedly ultra vires acts by the Tribe and the individual defendants.  Plaintiff's second claim alleges that the search and seizure of his personal property, along with his subjection to the jurisdiction of the tribal court, his arrest and imprisonment, and his banishment violated the Indian Civil Rights Act ("ICRA").  The third claim alleges that the actions complained about in the second claim violated the Civil Rights Act of 1964.  Plaintiff's last three claims against the Tribe and the individual defendants are a false imprisonment claim, a battery claim, and an intentional infliction of emotional distress claim.  None of these claims relates to real estate.  They are tort and civil rights claims.  The immovable property exception cannot be used to defeat tribal sovereign immunity here.

Plaintiff contends that because one of the remedies he seeks is an injunction to protect him from future acts by the Tribe and the individual defendants, they cannot rely

---

[27]*Id.* at 1655.

on tribal sovereign immunity.  Plaintiff cites *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma.*[28]  There, the Court held that tribal sovereign immunity prevented Oklahoma from taxing the tribe's sale of cigarettes on reservation land to tribal members, but that it could tax such sales to non-members of the tribe.  The decision was applicable to future cigarette sales, leading Justice Stevens to write in his concurring opinion that "a tribe's sovereign immunity from actions seeking money damages does not necessarily extend to actions seeking equitable relief."[29]  Plaintiff cites no other authority.  He advances no explanation why in the case at bar the request for an equitable remedy "necessarily" overcomes the Tribe and individual defendants' reliance on tribal sovereign immunity.  This court does not read *Potawatomi* to establish a rule of law that would allow Plaintiff to avoid tribal sovereign immunity here.

Plaintiff also argues that the Tribe's acceptance of federal funding constitutes a waiver of sovereign immunity.  Plaintiff cites *Santa Clara Pueblo v. Martinez.*[30]  That decision does not support Plaintiff's argument.  In that case, a female member of the tribe advanced a claim against the tribe alleging that a tribal rule denying membership to her child who was fathered by a non-tribal member violated the ICRA.  The Court held that the ICRA did not waive the tribe's sovereign immunity.  In its discussion the Court reiterated the settled proposition that waivers of sovereign immunity may not be implied:

---

[28] 498 U.S. 505 (1991).

[29] *Id.* at 516.

[30] 436 U.S. 49 (1978).

they must be expressed unequivocally.[31] Of direct relevance to Plaintiff's argument, *Santa Clara* Pueblo did not include any discussion of federal funding given to the tribe. Moreover, there is considerable case law which recognizes that accepting federal funds does not constitute a waiver of sovereign immunity.[32]

Based on the preceding discussion, the court concludes that all of Plaintiff's claims against the Tribe and the individual defendants acting in their official capacities as officers and employees of the Tribe are barred by the doctrine of tribal sovereign immunity. Plaintiff has not proved that the court has subject matter jurisdiction over these claims, so they will be dismissed pursuant to Rule 12(b)(1).

**Individual Capacity Claims**

The Tribe and the individual defendants argue that Plaintiff's individual capacity claims are in reality official capacity claims. Plaintiff argues that his individual capacity claims are viable. In resolving this disagreement, it is noted that under Rule 12(b)(6), all Plaintiff's allegations of material fact must be accepted as true and construed in the light favorable to Plaintiff.[33]

Count I advances a claim based on actions which Plaintiff says were *ultra vires* actions by officers of the Tribe. To the extent that this claim is asserting that the Tribe

---

[31]*Id.* at 58.

[32]See, *e.g., Atascadero State Hospital v.* Scanlon, 473 U.S. 234, 246-47 (1985); *Madison v. Virginia*, 474 F.3d 118, 130 (4th Cir. 2006); *A. W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 250 (3d Cir. 2003).

[33]*Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).

could not banish him, it cannot be an individual capacity claim, because it rests entirely on the premise that the banishment was wrongly taken by tribal officials on behalf of the Tribe. However, acting in their individual capacities with respect to banishment, the officers could not be acting on behalf of the Tribe. To the extent that this claim is based on arrest and detention of Plaintiff it is subsumed in other Counts of the Complaint, which are addressed below. Count I will be dismissed with respect to Plaintiff's banishment.

The allegation in paragraph 35 of the Complaint regarding the seizure of Plaintiff's personal property does not state a plausible claim with respect to the seizure by VPSO Wassilie, because the property seized was contraband not permitted in the dry village. The allegation in paragraph 37 of the Complaint refers to the seizure of unspecified personal property from Plaintiff's dwelling and when viewed in the light favorable to Plaintiff would support a plausible claim for the violation of Plaintiff's civil rights as pled in Counts II and III by officer Nanalook, but for the points discussed below.

Plaintiff's attempt to rely on a violation of ICRA pled in Count II fails with respect to both VPSO Wassilie and officer Nanalook. It is clear that Plaintiff is asserting a violation of the ICRA provision which provides that no tribe exercising the power of self-government may "violate the right . . . to be secure in their persons, houses, papers, and effects against unreasonable search and seizures . . . ."[34] While such a violation may be what happened to Plaintiff, this court cannot adjudicate the claim. The ICRA

---

[34] 25 U.S. C. § 1302(a)(2).

creates no private right of action, and the Supreme Court has explained that § 1302 creates no implied right of action against a tribe or its officers.[35] It follows that Count II must be dismissed without prejudice to Plaintiff's pursuit of relief in the Togiak tribal court.

In Count III, Plaintiff asserts a violation of his rights under the United States Constitution for the search and seizure of his property. The claim is the type that may be brought under 42 U.S.C. § 1983. However, § 1983 is premised on action taken under color of state law. Plaintiff does not allege that any act by the Tribe or tribal defendants was taken under color of state law. He is complaining about actions taken under color of tribal law. Count III must therefore be dismissed.

The allegations in paragraph 36 of the Complaint supporting Count IV allege that Plaintiff was incarcerated for six days before being removed from Togiak the second time. The Tribal Court order issued after Plaintiff's return to Togiak does not direct that Plaintiff be imprisoned. The order dated March 30, 2017, specifically directs that Plaintiff "will be escorted to the airport for immediate transportation out of Togiak."[36] Viewed in the light favorable to Plaintiff the actions taken may have been taken in the actors' individuals capacities, for it appears that there was no tribal authorization for Plaintiff's imprisonment. Count IV states a viable individual capacity claim. However, Count IV, like Counts II and III, cannot be pursued in this court. Plaintiff may pursue this

---

[35]*Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 51, 71-72 (1978) (foreclosing claim for declaratory and injunctive relief); *Stanko v. Oglala Sioux Tribe*, 916 F.3d 694, 700 (8th Cir. 2019) (plaintiff Stanko had no damage claim which he could pursue in federal court).

[36]Docket 23-2 at p. 2.

claim in tribal court. Count IV will be dismissed without prejudice to pursuit of the claim in tribal court.

The allegations in paragraph 38 regarding the conduct of defendants Leroy Nanalook, Jimmy Coopchiak, Bobby Coopchiak, Herbert Lockuk, and Paul Markoff is not conduct that necessarily was required by the order to banish Plaintiff. It is plausible that banishment could have been achieved without resorting to the violent conduct alleged. The battery claim in Count V may be pursued as an individual capacity claim, but like the claims in Counts II, III, and IV, this claim is one to be pursued in tribal court. Count V will be dismissed without prejudice to a claim in tribal court.

Finally, the allegations in paragraph 36 of the Complaint regarding restrictions on Plaintiff's access to food, medicine, hygiene, and communications state a plausible individual capacity claim of intentional infliction of emotional distress, which is pled in Count VI. Yet, as with the claims discussed above, this court lacks the authority to adjudicate the claim. It will be dismissed without prejudice to its pursuit in tribal court.

**Official Immunity**

Several of the individual defendants are being sued for actions which they took as Tribal judges. These are defendants Kritz, Thompson, Nick, Wasillie, and Lockuk ("judicial defendants"). Defendants contend that tribal judges, like state and federal judges, are entitled to absolute judicial immunity for actions they take within the jurisdiction of their court.[37] Plaintiff does not respond to this argument but merely

---

[37]Defendants cite *Inbler v. Pactman*, 424 U.S. 409, 418 (1976). The case recognized that common law absolute judicial immunity is available in § 1983 actions.

contends that no immunity applies to individual capacity claims. However, any claim arising from the orders issued by the tribal court is perforce a claim based on actions taken by the judicial defendants in their capacities as judges. It follows that all Plaintiff's claims against the judicial defendants will be dismissed.

Concerning the other individual defendants, the Tribe and the individual defendants argue that those persons are entitled to qualified immunity.[38] Defendants assert that tribal officials, employees, and volunteers, like state officials and employees, may make use of the doctrine of qualified immunity. Plaintiff does not dispute that proposition. The defense then asserts that qualified immunity protects defendants from the need to participate in litigation, not just from liability for their actions. This is hornbook law, and Plaintiff does not contest that proposition. The Tribe and the individual defendants then argue that unless the conduct at issue violated clearly established constitutional or statutory rights qualified immunity bars prosecution of any claim based on that conduct. Again, Plaintiff does not dispute this principle of the qualified immunity doctrine. Plaintiff's response is devoid of any argument that any of the conduct alleged in the Complaint clearly violated a statutory or constitutional right. Moreover, even if Plaintiff did contend that the actions of which he complains violated a clearly established right, his remedy lies in tribal court. As explained above, this court lacks jurisdiction to entertain Plaintiff's claims.

---

[38]Doc. 22 at p. 17.

**Federal Tort Claims Act**

Defendants also argue that Plaintiff's claims must be dismissed pursuant to the Federal Tort Claims Act. The court finds it unnecessary to address this argument, because Plaintiff's claims will be dismissed based on the other grounds discussed above.

## V.  CONCLUSION

For the reasons set forth above, Plaintiff's claims against the Tribe and the individual defendants are dismissed without prejudice to Plaintiff's pursuit of claims in tribal court. This order does not address Plaintiff's claim against defendant Teodoro Pauk in his capacity as Mayor of the City of Togiak. That claim remains before this court.

DATED this 12th day of September 2019.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT